Case 4:23-cv-03990   Document 15   Filed on 11/04/24 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
November 04, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KATHRYN C.,[1] § § | |
| Plaintiff. § § | |
| V. § | CIVIL ACTION NO. 4:23-cv-03990 |
| § § | |
| COMMISSIONER OF SOCIAL SECURITY, § § § § | |
| Defendant. § | |

## OPINION AND ORDER

Plaintiff Kathryn C. seeks judicial review of an administrative decision denying her application for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). Kathryn C. and Defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner"),[2] have both filed briefs. *See* Dkts. 9, 13. After reviewing the briefing, the record, and the applicable law, I reverse the Commissioner's decision and remand to the Social Security Administration for further proceedings consistent with this opinion.

## BACKGROUND

On June 5, 2021, Kathryn C. filed an application for Title II disability and disability insurance benefits, alleging disability beginning June 4, 2021. Her applications were denied and denied again upon reconsideration. On December 6, 2022, an Administrative Law Judge ("ALJ") held a hearing. On January 9, 2023,

---

[1] On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

the ALJ issued a decision finding that Kathryn C. was not disabled. Kathryn C. filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See Salmond*, 892 F.3d at 817. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Kathryn C. "has not engaged in substantial gainful activity . . . since June 4, 2021, the alleged onset date." Dkt. 8-1 at 39.

The ALJ found at Step 2 that Kathryn C. suffers from "the following medically determinable and severe impairments: Affective Mood Disorder; Generalized Anxiety Disorder; and Post-Traumatic Stress Disorder." *Id.*

At Step 3, the ALJ found that Kathryn C. "does not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments." *Id.* at 40.

Prior to consideration of Step 4, the ALJ determined Kathryn C.'s RFC as follows:

> [Kathryn C.] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is mentally limited to simple, repetitive one to three-step tasks. To minimize stress, she should never be required to work at a forced pace. Due to [her] limitations in adapting to change, she should be restricted to no more than only occasional change in the work setting. Due to her social limitations, [she] should be limited to no more than occasional interactions with the public and coworkers.

*Id.* at 42.

At Step 4, the ALJ found that Kathryn C. is "unable to perform any past relevant work." *Id.* at 45. Despite Kathryn C.'s inability to perform past relevant work, the ALJ elicited testimony from a vocational expert ("VE") that "there are jobs that exist in significant numbers in the national economy that [Kathryn C.] can perform." *Id.* at 46. Accordingly, the ALJ found that Kathryn C. "has not been under a disability, as defined in the Social Security Act, from June 4, 2021, through [January 9, 2023]." *Id.* at 47.

## DISCUSSION

Kathryn C. advances several arguments for why the Commissioner's decision should be reversed. One is persuasive: the ALJ erred in evaluating the opinion of Dr. Larry Kravitz, a state agency psychological consultant.

Because Kathryn C. filed for benefits "on or after March 27, 2017," the ALJ was required to apply the new regulations regarding how the Commissioner evaluates medical opinions and prior administrative findings. 20 C.F.R. § 404.1520c. Through the new regulations, the Commissioner revised the standards and procedures for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule. As such, "ALJs are no longer required to give controlling weight to the opinions of treating physicians." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-cv-166, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021) (quotation omitted). Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources. *See* 20 C.F.R. § 404.1520c(b)(2). In evaluating persuasiveness, the ALJ considers five factors: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion. *Id.* § 404.1520c(c). The most important factors in evaluating persuasiveness are supportability and consistency. *See id.* § 404.1520c(b)(2).

With respect to "supportability, the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, No. 1:20-cv-261, 2021 WL 319354,

4

at \*6 (S.D.N.Y. Jan. 29, 2021). "As for consistency, the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* "Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.*

At a minimum, an ALJ's persuasiveness explanation should "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (cleaned up). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson*, 2021 WL 3708047, at \*5 (quotation omitted).

At the reconsideration level, Dr. Larry Kravitz issued an opinion as to Kathryn C.'s mental residual functional capacity. Dr. Kravitz opined that Kathryn C. "is able to understand, remember, and carry out simple, but not detailed or complex tasks, make simple decisions, concentrate for two-hour periods, interact with others on a brief and superficial basis, and handle only routine, predictable work stressors." Dkt. 8-1 at 87. In making his own RFC determination, the ALJ made the following findings:

> Dr. Hauck found [Kathryn C.] limited to detailed, but not complex work while Dr. Kravitz found [Kathryn C.] limited to simple work. In support, these sources cited the consultative exam, [Kathyrn C.]'s function report, and a handful of treatment notes. Yet although both of these sources found moderate limitation in social function and adapting, there are no limitations contained in the residual functional capacity found by these sources, which does not support the opinions. . . . Dr. Kravitz'[s] opinion is generally persuasive except it is internally inconsistent with the B criteria[3] so there are additional limitations, as reflected in the residual functional capacity evaluation.

---

[3] "The severity of 'mental disorders' is measured using medical criteria ('paragraph A'), functional criteria ('paragraph B'), and an analysis of 'serious and persistent mental

5

*Id.* at 45 (cleaned up). This analysis of Dr. Kravitz's opinion simply does not make sense.

As the ALJ noted, for the B criteria, Dr. Kravitz found that Kathryn C. had moderate limitation in interacting with others and adapting. *See id.* at 83. Dr. Kravitz also found that Kathryn C. had moderate limitation in concentrating, persisting, or maintaining pace, *see id.*, a finding that the ALJ failed to note. Dr. Kravitz's findings precisely mirror his mental RFC for Kathryn C., in which he limited her to "brief and superficial" interactions with others, "only routine, predictable work stressors," and concentrating for only two-hour periods. *Id.* at 87. Thus, there is no logic to be discerned from the ALJ's finding that Dr. Kravitz's opinion is "internally inconsistent." *Id.* at 45. It plainly is not. The ALJ's illogical analysis of Dr. Kravitz's opinion is not a "credible evidentiary choice." *Salmond*, 892 F.3d at 817. In other words, the ALJ's illogical assessment of Dr. Kravitz's opinion renders his decision unsupported by substantial evidence.

The Commissioner contends:

> Even assuming that Plaintiff is correct in her contention that the ALJ found Dr. Kravitz's findings unpersuasive, the ALJ nonetheless accounted for Dr. Kravitz's findings in the RFC assessment. The ALJ's finding that Plaintiff was limited to unskilled work with simple, repetitive, one-to-three-step tasks that never required working at a forced pace and no more than occasional change in the work setting and interactions with the public and coworkers sufficiently accounts for Dr. Kravitz's findings regarding concentration, handling work stressors, and interacting with others. Moreover, the ALJ's finding is consistent with Dr. Kravitz's findings regarding making simple decisions and understanding, remembering, and carrying out simple tasks. Therefore, contrary to Plaintiff's assertion, the ALJ did not

---

disorders' ('paragraph C')." *Vigil v. Berryhill*, No. EP-17-cv-0242, 2018 WL 3233345, at *2 (W.D. Tex. July 2, 2018) (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(a)–(c)). A claimant's mental disorder satisfies "paragraph B" when it results in one "extreme" or two "marked" limitations in the following "areas of mental functioning a person uses in a work setting": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b).

> disregard Dr. Kravitz's findings, and substantial evidence supports the RFC assessment.

Dkt. 13 at 9 (cleaned up). There are two problems with this argument.

First, it is unclear to me the extent to which the ALJ relied on Dr. Kravitz's opinion given the ALJ's consistent misrepresentation of Dr. Kravitz's opinion. In the same breath that the ALJ said he found Dr. Kravitz's opinion "generally persuasive," the ALJ also—erroneously—said that Dr. Kravitz's opinion was "internally inconsistent with the B criteria so there are additional limitations." Dkt. 8-1 at 45. That suggests to me that the ALJ imposed his own additional limitations not to account for Dr. Kravitz's findings, but because by the plain language of his decision, the ALJ failed to recognize that Dr. Kravitz imposed limitations beyond limiting Kathryn C. to simple work. This is not the only time that the ALJ misstated Dr. Kravitz's opinion. In the immediately preceding paragraph, the ALJ said that "Dr. Hauck *and Dr. Kravitz* found [Kathryn C.] able to perform *detailed* work." *Id.* (emphasis added). This is plainly wrong. Dr. Kravitz opined that Kathryn C. can "carry out simple, *but not detailed or complex tasks*." *Id.* at 87 (emphasis added). The ALJ's consistent misstatement of Dr. Kravitz's opinion suggests to me that he did not actually consider Dr. Kravitz's opinion.

Second, the ALJ never recounts Dr. Kravitz's opinion that Kathryn C. can concentrate for only two hours at a time. The Commissioner contends that the ALJ's RFC "sufficiently accounts for Dr. Kravitz's findings regarding concentration." Dkt. 13 at 9. But it is difficult to see how that can be true when, by his own words, the ALJ believed that Dr. Kravitz imposed "no limitations" beyond finding that Kathryn C. was limited to simple work. Dkt. 8-1 at 45. An inability to concentrate for more than two hours at a time necessarily implies breaks every two hours. During the administrative hearing, the ALJ elicited testimony from the VE that "three to four unscheduled breaks a day lasting at least a half hour" was incompatible with employment. *Id.* at 69. Thus, had the ALJ actually considered Dr. Kravitz's finding regarding Kathryn C.'s inability to concentrate, it is entirely

7

conceivable that he would have reached a different conclusion. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (holding that error was harmless where it was "inconceivable that the ALJ would have reached a different conclusion"). For this reason, the ALJ's error in analyzing Dr. Kravitz's opinion was harmful and requires remand.

To be clear, my opinion should not be construed as holding that the ALJ was required to implement Dr. Kravitz's findings in determining Kathryn C.'s RFC, or that the ALJ is prohibited from formulating an RFC after rejecting all medical opinions. That is not why I am remanding this case. I am remanding this case because the ALJ's analysis of Dr. Kravitz's opinion is illogical and I am not going to speculate as to what the outcome would have been if the ALJ had logically evaluated Dr. Kravitz's opinion. *See Cooley*, 587 F. Supp. 3d at 499.

## CONCLUSION

For the reasons discussed above, the Commissioner's decision is reversed and this matter is remanded to the Social Security Administration for further proceedings consistent with this opinion.

SIGNED this 4th day of November 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

8